# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ROBERT WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:18-cv-01725-LCB |
| | ) | |
| URS FEDERAL TECHNICAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case stems from the alleged discrimination Plaintiff Robert Washington experienced while employed by URS Federal Services, Inc[1]. Plaintiff is African American. (Doc. 1 at 1). When he was an employee, Plaintiff claims that he was demoted from his position as general foreman and ultimately fired because of his race and color. (*Id.* at 7). Plaintiff also claims he experienced a hostile work environment because of racist comments and interactions that happened at work. (*Id.* at 3). Defendant denies that Plaintiff's race or color was a factor in his demotion or termination. According to Defendant, Plaintiff was demoted due to financial considerations unrelated to his job performance or any other non-economic factor.

---

[1] Defendant notes that it was misnamed URS Federal Technical Services in the complaint. (Doc. 5 at 1).

Defendant contends that Plaintiff was terminated for falsifying his time sheet by incorrectly reporting the hours he worked.

Before the Court are Defendant's Motion to Strike Plaintiff's Evidentiary Submissions (Doc. 25) and Motion for Summary Judgment (Doc. 17). For the reasons stated below, the Court grants in part and denies in part Defendant's Motion to Strike. Defendant's Motion for Summary Judgment is granted.

## I.  MOTION TO STRIKE (Doc. 25)

Defendant filed a motion objecting to Plaintiff's evidentiary submissions, or, in the alternative, moving to strike those submissions.  (Doc. 25 at 1). Defendant objects to Plaintiff's proposed submission of a letter written by the president of Plaintiff's labor union in which the union president opined that Plaintiff's termination was unfair. (Doc. 23-1). Defendant also objects to many of the facts Plaintiff presented in his reply brief. (Doc. 25). Plaintiff's reply brief disputes or clarifies many of Defendant's alleged undisputed facts, such as Defendant's disciplinary policies regarding falsification of timesheets and other policies and practices regarding employee timesheets. (Doc. 22). Defendant also objects to Plaintiff's characterization of these and other policies as well as his interpretation of the relevant collective bargaining agreement.  Finally, Defendant objects to Plaintiff's contention that several white employees improperly reported their hours but were not fired.  The remaining objections are based on Defendant's contention

that some of Plaintiff's assertions in his response brief are not responsive to the actual allegations in Defendant's motion. *See* (Doc. 25).

The Court finds that most of the challenged evidence is unnecessary to the resolution of the present motion. For example, the Court does not need to consider the letter from Plaintiff's union president. Additionally, Defendant's objections to Plaintiff's interpretations of the company's disciplinary policy and the collective bargaining agreement need not be resolved. Both the collective bargaining agreement and the employee handbook - which contains the company's disciplinary policy – have been submitted. Those documents speak for themselves, and the Court does not need to consider the parties' interpretation of either document. Thus, aside from the two matters discussed below, Defendant's motion to strike is moot.

### A. Legal Standards for a Motion to Strike

Courts will construe "a party's motion to strike certain evidence as an objection to that evidence's admissibility." *Taylor v. City of Gadsden*, 958 F. Supp. 2d 1287, 1291 (N.D. Ala. 2013), *aff'd*, 767 F.3d 1124 (11th Cir. 2014). Federal Rule of Civil Procedure 56(c)(2) allows a party to object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Evidence that is otherwise admissible can be submitted in inadmissible form at summary judgment. *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996). Plaintiff did not respond to Defendant's Motion to Strike, so any

arguments Plaintiff could have made in opposition to this motion are abandoned. *Jones v. Bank of America*, *N.A.*, 564 F. App'x. 432, 434 (11th Cir. 2014).

Typically, a court cannot consider inadmissible hearsay on a motion for summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322. However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" *Id.* at 1323. For example, a statement can be admissible if it survives under an exception to the hearsay rule, is not being offered for the truth of the matter asserted or is only offered for impeachment purposes. *Id.* at 1323-24. *See also* Fed. R. Evid. 803, 804.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. All relevant evidence is admissible except when excluded by "the United States Constitution; a federal statute; these rules [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402.

**B. Defendant's remaining objections and motion to strike**

**1. Plaintiff's claim that white employees worked fewer hours than reflected on their times sheets.**

The Court turns first to Defendant's objection to and motion to strike Plaintiff's contention that white employees "worked fewer hours than reflected on their timesheets." (Doc. 22 at 4). Defendant objects based on hearsay, lack of foundation, and relevance. During Plaintiff's first deposition, he claims he has a "whole list" of white employees who charged time they did not work. (Doc. 19-3 at 145). However, Plaintiff later admitted he only had second-hand knowledge that most of these employees were falsifying their timesheets. *See* (*Id.* at 153, 206). This is hearsay without an exception. The only employee whom Plaintiff seemingly has direct knowledge is Billy Dunn because he reported to him and approved his time sheets. (*Id.* at 206). Accordingly, Plaintiff can only assert Billy Dunn as a white employee that falsified his time sheets without retribution. Therefore, Defendant's motion to strike regarding this fact is granted in part and denied in part.

## 2. Plaintiff's contention that his supervisor ignored his complaints of discriminatory behavior and allowed himself to be influenced by others who were prejudiced against Plaintiff

In its brief in support of its motion for summary judgment, Defendant asserted that race played no role in Plaintiff's supervisor's decision to terminate him. In his response to that claim, Plaintiff asserted that his supervisor, Donnie Crouch "ignored his complaints of discriminatory behavior" and "allowed himself to be influenced by others who were prejudiced against [Plaintiff]." (Doc. 22 at 4). Defendant objects and moves to strike based on relevance. (Doc. 25).

In his deposition, Plaintiff testified that Crouch ignored his claims of racial harassment after someone referred to him as a "monkey in a tree." (Doc. 19-3 at 39). According to Plaintiff, he reported this incident to Crouch, and Crouch "didn't really say nothing (sic). He just kind of shook his head, brushed it off." (*Id*. at 12). However, when asked if he knew what Crouch did after that, Plaintiff replied, "No. I don't know that." (*Id.*). Accordingly, this evidence does not refute Defendant's assertion that race did not play a role in Crouch's decision to terminate Plaintiff. Nevertheless, it is relevant and, therefore, not due to be stricken.

However, Plaintiff's other contention, i.e., that Crouch "allowed himself to be influenced by others who were prejudiced against the Plaintiff" lacks any foundation. As noted, Plaintiff did not respond to Defendant's motion to strike and, consequently, has failed to point to any other evidence in the record that would support his speculative statement. Accordingly, Defendant's motion to strike this assertion is granted.

## II.    MOTION FOR SUMMARY JUDGMENT (Doc. 17)

### A. Factual Background

1.  Plaintiff's Demotion

It is undisputed that Plaintiff Robert Washington worked as an electrician at Defendant URS Technical Services, Inc. beginning in 1998. (Doc. 1 at 2). Plaintiff eventually was promoted while employed by the company. He started as an

apprentice electrician in 1998, was promoted to journeyman in 2002, foreman in 2010, and general foreman in 2012. (Doc. 18 at 2-3). As general foreman, Plaintiff supervised a crew of 35 electricians and foremen. (Doc. 19-3 at 92). Ultimately, Plaintiff was demoted back to foreman in 2017. (Doc. 1 at 3).

Plaintiff believes the reason for his demotion was based on his race and color. (Doc. 1 at 7). He supports this claim by comparing himself to Ken Turner, a white general foreman with less experience at the company was not demoted. (Doc. 19-3 at 91). Defendant claims that Plaintiff's demotion was a monetary decision and that Turner kept his position as general foreman because his position required him to oversee "multiple crafts," unlike Plaintiff who oversaw only one craft. (Doc. 19-1 at 3). Turner supervised laborers, carpenters, and pipefitters while Plaintiff supervised electricians. (Doc. 19-3 at 92). Plaintiff does not dispute these facts. However, he asserts that he had more seniority than Turner and that, although he supervised only one craft, he supervised a large crew of electricians.

2. Plaintiff's Termination

It is undisputed that Defendant maintained a policy that an employee who charges more time than he works is subject to disciplinary action, "up to and including termination of employment." (Doc. 19-4 at 21). It is also undisputed that employees received training on how to correctly report time and consequences if time was not reported properly. (Doc. 18 at 4). Plaintiff admitted he received

timekeeping training. (Doc. 19-3 at 100). Employees are instructed to charge time taken for lunch beyond 30 minutes as vacation time. (Doc. 19-11 at 1). However, they can charge an additional two hours for a project if they arrive prior to the start of normal work hours. (Doc. 19-11 at 1). *See also* (Doc. 19-5 at 33). Workers are also allowed to charge four hours of overtime when coming in on an off day, regardless of how long they work on a project. (Doc. 19-11 at 1).

Plaintiff was accused of incorrectly reporting his time on August 16, 2017, and August 18, 2017. (Doc. 19-3 at 194). On August 16, Plaintiff failed to correctly charge the time he was off location as vacation. Instead, he charged the time as if he were working. (Doc. 19-1 at 4). On August 18, Plaintiff worked overtime, and under the terms of the collective bargaining agreement (CBA), he could charge four hours for the time he worked. (*Id*. at 5). Instead, Plaintiff charged six hours for his work on August 18. (*Id*.). Plaintiff's timesheets reflect that he charged more time than was allowed under employee regulations and the CBA. (Doc. 19-6 at 69). He does not dispute he incorrectly reported his time, but maintains his entries were mistakes. (Doc. 19-3 at 144).

Jeff Bennett, Defendant's deputy program manager, first discovered Plaintiff's incorrect time entries. (Doc. 19-11 at 2). On August 16, 2017, Plaintiff sent a text message to Bennett saying he was going off premises at 11:16 a.m. and did not return until 3:30 p.m. (*Id*.). After reviewing his timesheet, Bennett discovered

it did not reflect Plaintiff charged the correct hours to vacation time. (*Id.*). Regarding the August 18, 2017, entry, Bennett knew that Plaintiff had incorrectly charged time because he spent no more than two hours at the worksite and texted Bennett when he had completed the job. (*Id.* at 3). Once he learned of Plaintiff's incorrect time entries, Bennett met with him on August 22, 2017, to discuss his timesheets. (*Id.*). Plaintiff attempted to amend his timesheets after being confronted. (Doc. 19-3 at 169). Donnie Crouch, program manager, ultimately decided to terminate Plaintiff's employment on August 23, 2017, for falsifying his time after independently reviewing his timesheets. (Doc. 19-1 at 4). Before these two incidents, Plaintiff did not have any disciplinary marks on his record. (Doc. 1 at 4). He maintains his time entries were mistakes. (Doc. 19-3 at 115).

After his termination, Plaintiff contacted Defendant's ethics and compliance hotline on August 25, 2017, to report Bennett and Crouch for discrimination. (Doc. 19-7 at 15). In the report, he claimed that he was demoted and fired for discriminatory reasons. (*Id.*). Plaintiff's union also initiated a grievance challenging Plaintiff's removal on August 24, 2017, and the dispute moved into arbitration. (Doc. 19-2 at 5). The arbitrator found Defendant had submitted clear and convincing evidence that Plaintiff had violated the rules and had "discretionary authority to determine the appropriate penalty." (*Id.* at 19). Plaintiff also filed a charge of discrimination with the EEOC for race and color discrimination on December 31,

2017. (Doc. 1-1 at 1). The EEOC closed Plaintiff's file because it was unable to conclude Defendant had violated Plaintiff's rights under Title VII. (Doc. 1-2 at 1). Plaintiff maintains that he was fired because of his race and color because, he said, another white employee committed the same offense and was not fired. (Doc. 19-3 at 206). Defendant maintains that Plaintiff was not fired for a discriminatory reason, but because he inappropriately charged time he did not work. (Doc. 18 at 7).

### 3. Hostile Work Environment

While employed by Defendant, Plaintiff experienced actions he felt created a hostile work environment because of his race and color. (Doc. 1 at 5). When Plaintiff started working at the company in 2002, "on several occasions" former employee Bud Watkins called him a "nigger." (Doc. 19-3 at 59). Labor manager Gene Keener referred to him as "a monkey in a tree, on a ladder" when Plaintiff was performing work on a ladder. (*Id.* at 30). Keener also remarked, "Should I shake that monkey out of the tree?" when referring to Plaintiff. (*Id.* at 35). Plaintiff reported the incident to Donnie Crouch, who "brushed it off." (*Id.* at 39). Crouch referred to employee Daniel Quillen as Jim Scrivner's "KKK buddy." (*Id.* at 46). Further, Plaintiff also claims Jeremy McGee, another employee, restricted access to the refrigerator to white employees only. (*Id.* at 72). McGee put a note on the refrigerator that stated that it was for his crew's use only. (*Id.*). Plaintiff contends that because McGee's crew was mostly white, it discriminated against black employees. (*Id.*). Plaintiff does

concede that Quincy Loveless, a black employee, was a member of McGee's crew. (*Id*.).

Additionally, Plaintiff states that inappropriate pictures were in the workplace and circulated by other employees. For example, Plaintiff claims that Jeremy McGee put a picture of someone wearing a Ku Klux Klan hood in his office. (Doc. 19-3 at 73-74). Another employee had doctored a photo of Steve Davis, a maintenance electrician, seemingly performing oral sex on a black television actor. (Doc. 19-9); (Doc. 19-3 at 73-74). While Plaintiff's picture and name were not in the photo, he believes the picture reflected the sentiment that Davis was "kissing ass to [Plaintiff]." (*Id*. at 76-77).

Plaintiff also asserts other times where actions or remarks were not explicitly racial, but he considered them discriminatory. He stated that Crouch told him to "clean his drawers," which Plaintiff felt was said to ridicule him because it implied he smelled. (*Id*. at 56). He also stated that when he was in a meeting, Jeff Bennett told him to "shut up" disrespectfully. (*Id*. at 67). Additionally, he alleges that he was denied a raise at the completion of his apprenticeship and was denied overtime. (*Id*. at 61-62; 236-237). Plaintiff also claims that Crouch refused to supply him with a new phone after he had lost or broken other phones. (*Id*. at 252-253).

## B. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.")

### C. Disparate Treatment Claims

Defendant claims Plaintiff's disparate treatment allegations cannot survive summary judgment. Defendant argues Plaintiff has not presented a prima facie case that his demotion or termination was racially motivated. *See* (Doc. 18 at 14, 19). Instead, Defendant asserts it has presented enough evidence to show that its decisions to demote and subsequently terminate Plaintiff were legitimate and not a pretext for discrimination. (*Id*. at 14, 20).

A party may show he suffered from disparate treatment discrimination by presenting direct or circumstantial evidence. *Burke-Fowler v. Orange Cty., Fla*., 447 F.3d 1319, 1323 (11th Cir. 2006). Discrimination claims founded on circumstantial evidence are analyzed "under the *McDonnell Douglas* burden shifting framework." *Id*. *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To make a prima facie case for disparate treatment based on racial discrimination, a plaintiff must demonstrate: "(1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorable than [he] was treated; and (4) [he] was qualified to do the job." *Burke-Fowler*, 447 F.3d at 1323. If a plaintiff can satisfy these elements, "then the defendant must show a legitimate, non-discriminatory reason for its employment action." *Id*. Finally, if the defendant satisfies its burden, a plaintiff "must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id*. Only the third element is in dispute,

i.e., that Defendant treated a similarly situated white employee more favorably than Plaintiff.

A plaintiff can show a "similarly situated" employee was treated more favorably than him by using a comparator. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1217 (11th Cir. 2019). This comparator analysis must be conducted at the prima facie stage of the *McDonnell Douglas* burden-shifting examination. *Id.* at 1218. A meaningful comparator must be "similarly situated in all material respects" to the plaintiff. *Id.* A similarly situated comparator does not need to be "similar in all but the protected ways." *Id.* at 1227 (quoting *Young v. United Parcel Service, Inc.*, 575 U.S. 206, 228 (2015)). While determining who is similarly situated "in all material respects" to a plaintiff will "be worked out on a case-by-case basis," there are certain "guideposts" a court can follow. *Id.* A similarly situated comparator: "will have engaged in the same basic conduct (or misconduct) as the plaintiff; will have been subject to the same employment policy, guideline, or rule as the plaintiff; will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff; and will share the plaintiff's employment or disciplinary history." *Id.* at 1227. Ultimately, "a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot be reasonably distinguished." *Id.* at 1228 (quoting *Young*, 575 U.S. at 231).

1. Plaintiff's Demotion

Plaintiff contends that he was demoted based on race and color discrimination. (Doc. 22 at 10). He presents Ken Turner as a comparator for his demotion claim. According to Plaintiff, Turner, who is white, was not demoted from general foreman to foreman even though, Plaintiff claims, Turner had less seniority than him. (Doc. 19-3 at 92). Both Plaintiff and Turner were general foremen who worked for Defendant. (Doc. 18 at 20). However, Turner is not an adequate comparator as he can be "reasonably distinguished" from Plaintiff. *Lewis*, 918 F.3d at 1228. As a general foreman, Plaintiff supervised one craft, electrical work. *See* (Doc. 19-1 at 3); (Doc. 19-3 at 92). However, Turner was general foreman over three crafts: laborers, carpenters, and pipefitters. (Doc. 19-3 at 91-92). Plaintiff admits he did not do Turner's job. (*Id*. at 92). Accordingly, because Turner is reasonably distinguished from Plaintiff, he cannot be used as a comparator.

Plaintiff asserts that absent any comparator evidence, he can survive summary judgment "other than through use of a comparator." (Doc. 22 at 7). Instead of a comparator, Plaintiff argues that he has presented circumstantial evidence of Defendant's discriminatory reasons for his demotion. Indeed, "[t]he methods of presenting a prima facie case are flexible and depend on the particular situation." *Alvarez v. Royal Atl. Developers, Inc*., 610 F.3d 1253, 1264 (11th Cir. 2010). A plaintiff can also establish "a 'convincing mosaic' of circumstantial evidence that warrants inference of intentional discrimination." *Lewis*, 918 F.3d at 1220, n.6.

Plaintiff has not identified *what* circumstantial evidence he presents as enough to survive summary judgment. He generally asserts that he "was subjected to numerous racially discriminatory and hostile acts going back at least five years." (Doc. 22 at 9).

Assuming, *arguendo*, the allegedly discriminatory actions Plaintiff experienced[2] were enough to make a prima case for discriminatory treatment, he does not automatically satisfy the requirements of successfully demonstrating disparate treatment. Even viewing the facts in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Defendant has satisfied its burden of showing that Plaintiff's demotion was based on a "legitimate, non-discriminatory reason." *Burke-Fowler*, 447 F.3d at 1323. Program Manager Donnie Crouch stated that he had to make several personnel changes in response to "a reduction in the lump sum reoccurring services in the amount of $2.2 million dollars annually." (Doc. 19-1 at 2). This meant the company "had to perform the same amount of work with fewer people." (*Id*.). Following this reduction of money for services, both white and black employees were demoted. (*Id*. at 2-3). Ken Turner remained in his position because, Crouch determined, Turner had "successfully performed over multiple crafts." (*Id*. at 3). Therefore, Crouch said, it made "more sense" to allow Turner to

---

[2] The actions Plaintiff claims were racially discriminatory, a "monkey in a tree," will be discussed in greater detail in the Hostile Work Environment section of this opinion.

remain in his role than to hire someone else without his experience. (*Id*.). Plaintiff has identified no facts that would call this into dispute.

As Defendant has shown that there were legitimate, non-discriminatory reasons for his demotion, Plaintiff must demonstrate that the reasons proffered by Defendant for his demotion were pretextual. *Burke-Fowler*, 447 F.3d at 1323. To show a defendant's reason was pretextual, a plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez*, 610 F.3d at 1265 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). *See also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarrelling with the wisdom of that reason.")

Here, Plaintiff's contention that he was demoted because of race and color discrimination cannot survive summary judgment. A reasonable factfinder would not find that Defendant's reason for Plaintiff's demotion was implausible, inconsistent, or incoherent. *See Alvarez*, 610 F.3d at 1265. Besides Plaintiff's suspicions, he has presented no evidence such that a reasonable factfinder would conclude Defendant's reason for demoting black and white employees is "unworthy

of credence." *Alvarez*, 610 F.3d at 1265. Accordingly, there is no genuine dispute of material fact about whether Plaintiff's demotion was predicated on racial discrimination, and summary judgment as to this claim is granted.

## 2. Plaintiff's Termination

Plaintiff also alleges that his termination was motivated by discriminatory reasons. (Doc. 1 at 8). In this case, Defendant claims that Plaintiff was terminated for submitting falsified timesheets. (*Id*. at 7). As noted in the previous section, to make a prima facie showing of racial discrimination, Plaintiff must present evidence of a comparator or other circumstantial evidence. *See Lewis*, 918 F.3d at 1217; *See also Burke-Fowler*, 447 F.3d at 1325.

Plaintiff claimed that he "had a whole list" of white employees who also falsified timesheets but were not disciplined. (Doc. 19-3 at 145). Besides Billy Dunn, Plaintiff did not have any direct knowledge about the activities of other employees. *See* Part(I)A(11). Plaintiff claimed Dunn would take long lunches and "charge 10 hours even though [he] didn't work 10 hours." (*Id*. at 205-206). However, Billy Dunn is not an adequate comparator because he is reasonably distinguishable from Plaintiff. *See Lewis*, 918 F.3d at 1228. Plaintiff's time sheet errors were caught by his supervisors. If Dunn did falsify his timesheets as Plaintiff alleged, there is no evidence that he was caught and reprimanded for this action but still allowed to remain in his position.

A lack of a comparator is not automatically fatal to Plaintiff's case, as a prima facie discrimination case can be proven with other circumstantial evidence. *See Burke-Fowler*, 447 F.3d at 1325. Again, Plaintiff did not explicitly identify which pieces of circumstantial evidence establish that his termination was discriminatory. *See* (Doc. 22). Assuming, once more *arguendo*, that Plaintiff's circumstantial evidence of racial harassment is enough to make a prima facie case, Defendant has the burden to show there was a "legitimate, non-discriminatory reason" for its actions. *Burke-Fowler*, 447 F.3d at 1323.

Defendant makes clear how important it is for the company that its employees properly report their time. *See* (Doc. 18 at 2). Plaintiff does not dispute he received training on how to enter time correctly. (Doc. 19-3 at 100). Because Defendant is a federal contractor, it could "lose future government business" if they were audited and it was discovered that its employees were charging more time than they worked. (Doc. 19-1 at 4). The employee handbook states that "falsification of a timesheet…is grounds for disciplinary action, up to and including termination of employment." (*Id*. at 18). Plaintiff had incorrectly entered time twice in the same week. (Doc. 19-1 at 4-5). Even though Plaintiff argues he had no prior marks on his record and, therefore, did not have to be terminated for his first offense, the language of the employee handbook is clear. An employee that falsifies timesheets is subject to any form of discipline "up to and including" termination. (*Id*. at 18). Defendant also

offers evidence of Donnie Crouch terminating Keith Cox, a white employee with no disciplinary marks on his record who was terminated for falsely reporting his time.[3] (*Id*. at 5). Accordingly, Defendant has presented a legitimate, non-discriminatory reason for terminating Plaintiff.

Plaintiff must now show that his firing was "pretext for unlawful discrimination." *Burke-Fowler*, 447 F.3d at 1323. Plaintiff contends that his firing was pretextual because, he says, firing was a "multistep process" and requires that the company "implement a corrective action plan." (Doc. 22 at 11). However, the company's use of a corrective action plan does not refer to problems with employees. Instead, this plan refers to an office being out of compliance, not an employee. *See* (Doc. 19-1 at 24). Additionally, the language in the employee handbook makes it clear that an employee can be immediately fired for falsifying timesheets. (Doc. 19-1 at 18). Thus, even when viewing the facts in the light most favorable to Plaintiff, a reasonable factfinder would not conclude this was evidence of pretext. *See Alvarez*, 610 F.3d at 1265.

Plaintiff also contends that the emails between Donnie Crouch and Jeff Bennett "suggested another motive" for his dismissal. In this email, Crouch remarks

---

[3] Washington's termination memo for incorrectly reporting time lists the reasons for his firing such as: neglect of duty; failure to record time properly; and giving false or misleading information to URS (Doc. 19-1 at 64). Similarly, when Cox was fired for incorrectly reporting time, his termination memo includes reasons such as: neglect of duty; failure to record time properly; giving false or misleading information to URS; and leaving the facility or work assignment during working hours without proper supervisory permission. (*Id*. at 62).

that he believed the appropriate action to take against Plaintiff was termination after his time theft was discovered. He apparently rationalized this decision by commenting that Plaintiff was uncooperative and had a combative attitude towards management. (Doc. 19-1 at 70). Plaintiff suggests that this exchange was evidence of discriminatory pretext. (Doc. 22 at 12). However, Crouch's thoughts about Plaintiff's performance as an employee do not contradict nor are they inconsistent with the reason why Plaintiff was ultimately terminated – for falsifying timesheets. *See Alvarez*, 610 F.3d at 1265. The employee handbook shows that the consequences of time theft include termination. (Doc. 19-1 at 18). Whether Plaintiff was a good employee and should have kept his position despite these two infractions is not for the Court to decide. *Alvarez*, 610 F.3d at 1266, (quoting *Chapman*, 229 F.3d at 1030 ("We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions…as long as those decisions are not made with a discriminatory motive."))

Finally, Plaintiff argues his firing was pretextual because he was given a different reason for dismissal. (Doc. 1 at 8-9). Plaintiff remarks he felt there was some type of plan among the employees to get him fired. (Doc. 19-3 at 77). However, what matters in this case is what the employer believes, not the employee. *Alvarez*, 610 F.3d at 1266. With the evidence presented, a reasonable factfinder could not find that there was any discriminatory pretext with Plaintiff's firing. Accordingly,

no genuine dispute of material fact exists regarding whether Plaintiff's termination was discriminatory. Therefore, summary judgment as to this claim is granted.

**D. Hostile Work Environment Claim**

Defendant also moves for summary judgment on Plaintiff's hostile work environment claim. (Doc. 17 at 2). Plaintiff contends that he experienced a hostile work environment based on his race and color. (Doc. 1 at 7). Defendant argues that Plaintiff's claims, even if true, cannot constitute a hostile work environment. (Doc. 18 at 21).

To successfully establish a hostile work environment claim, a plaintiff must show "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Adams v. Austal*, *U.S.A.*, *L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014) (quoting *Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 21 (1993)). A party must present five elements if his hostile work environment claim is based on race:

> (1) that he is a member of a protected class; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was based on his race; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for the environment under a theory of either vicarious or direct liability.

*Id*. at 1248-49.

Regarding the fourth element, a plaintiff "must prove that the work environment is both subjectively and objectively hostile." *Id.* at 1249. A plaintiff "must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment." *Id.* (quoting *Mendoza v. Borden*, *Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)). The Court considers four factors to determine if a reasonable person in the plaintiff's situation would find the work environment objectively hostile: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 1250-51 (quoting *Mendoza*, 195 F.3d at 1246). Under this objective framework, the Court will ultimately consider the totality of the circumstances of the harassment a plaintiff has experienced. *Miller v. Kenworth of Dothan*, *Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). *See also Adams*, 754 F.3d at 1250 (District courts must "examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.")

Evidence Plaintiff claims contributed to a hostile work environment includes a picture of an employee he claims is modified to look like a member of the Ku Klux Klan. *See* (Doc. 19-3 at 73-74). *See also* (Doc. 19-9 at 45). He also claims that an

altered photo in which employee Steve Davis was depicted giving a television actor oral sex was meant to refer to him. *See* (Doc. 19-3 at 76-77). *See also* (Doc. 19-9 at 51). Plaintiff did not find out about these pictures until *after* he was fired from his position. (*Id*. at 24-25; 33). Even if Plaintiff thought these materials were offensive, he was not aware of them while employed by Defendant. Therefore, he cannot use these as evidence for his hostile work environment claim. *See Adams*, 754 F.3d at 1250 ("A reasonable person in the plaintiff's position is not one who knows what the plaintiff learned only after her employment ended or what discovery later revealed.")

Additional evidence Plaintiff presents to prove he experienced a hostile work environment cannot survive summary judgment. A plaintiff must show he is experiencing harassment because of his race. *See Adams*, 754 F.3d at 1249. Plaintiff has not created a genuine dispute of material fact as to whether some of these actions were motivated because of his race or color. For example, a reasonable fact finder would not conclude that Donnie Crouch directing Plaintiff to "clean his drawers" was racially motivated. Likewise, Plaintiff has not presented evidence that being told to "shut up" once during a meeting, denied a raise, an opportunity to work overtime, and not being offered a cell phone after breaking or losing three would lead a reasonable fact finder to find that this harassment was based on Plaintiff's race. (Doc. 19-3 at 252-254).

Further, Plaintiff's claims that employee Jeremy McGee discriminated against black workers cannot survive for similar reasons. Jeremy McGee put a sign on the refrigerator only allowing his crew members access, most of whom were white. (*Id.* at 72). However, black employees had refrigerator access because Quincy Loveless, who is black, was in McGee's crew. (*Id.* at 72). Finally, Plaintiff claims that Donnie Crouch referred to employee Daniel Quillen as Jim Scrivner's "KKK buddy" in a joking fashion. (*Id.* at 46). While the comment referred to the Klan, this remark was not directed towards Plaintiff. There is also no evidence that this comment, while certainly inappropriate, was made in Plaintiff's presence because of his race.

Finally, Plaintiff also claims he experienced a variety racially motivated insults when employed by Defendant. In 2002 as an apprentice, he states an employee named Bud Watkins called him a nigger on "several occasions." (*Id.* at 59-60). He also claims that employee Gene Keener referred to him as "a monkey in a tree, on a ladder." (*Id.* at 30).

Construing the facts in the most favorable light to Plaintiff, he has not created a genuine dispute of material fact that his workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Adams*, 754 F.3d at 1248. A reasonable factfinder in Plaintiff's position could find being called a nigger is severe and being referred to as that offensive slur and a monkey is humiliating. *See Smelter v. Southern Home Care Services Inc.*, 904 F.3d 1276, 1286 (11th Cir. 2018) (finding

the use of the racial slur "particularly egregious when directed toward a person in an offensive or humiliating manner.") Indeed, there is *no* place for this type of conduct in any work environment.

However, the Court cannot consider these two incidents in isolation, but must consider the totality of the circumstances. *Adams*, 754 F.3d at 1250. The occasions in which Bud Watkins called Plaintiff a racial slur happened in 2002 when he was an apprentice. (Doc. 19-3 at 59-60). Plaintiff recalls Keener referred called "a monkey in a tree" once five or six years before his deposition was taken in 2019. (*Id.* at 30-31). If true, this language is beyond repugnant and indefensible. However, these incidents do not rise to a level that is actionable. *Compare Miller*, 277 F.3d at 1276 (plaintiff established discriminatory treatment was frequent as he faced racial slurs daily). Plaintiff has also failed to present sufficient evidence that these experiences with Watkins and Keener unreasonably interfered with his job performance while employed. To be clear, if true, the conduct of Plaintiff's co-workers was extremely vile. But, considering the totality of the circumstances, there is no genuine dispute of material fact Plaintiff experienced a hostile work environment. Therefore, summary judgment as to this claim is granted.

## III.   CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 17) is granted. An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this March 29, 2020.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE